UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT CITY OF LOS ANGELES' RULE 12(B)(1) NOTICE OF MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, ALTERNATIVELY, TO STAY (DKT. 41);**

**DEFENDANTS ALL PERSONS INTERESTED'S NOTICE OF MOTION TO DISMISS AND MOTION TO STAY FIRST AMENDED COMPLAINT (DKT. 45)**

**JS-6**

## I. Introduction

On January 6, 2023, Newcastle Courtyards, LLC ("Newcastle"), Jonathan Benabou, as Trustee on behalf of the Mani Benabou Family Trust ("Benabou") and Roes 1 through 500 (collectively, "Plaintiffs") brought this action against the City of Los Angeles ("City"), the County of Los Angeles ("County"), the County of Los Angeles Recorder's Office ("Recorder's Office"), Does 1 through 500, and All Persons Interested in the Matter of the ULA ("API") (collectively, "Defendants"). Dkt. 1 ("Complaint"). On February 10, 2023, Plaintiffs filed a First Amended Complaint. Dkt. 14 ("FAC"). The FAC advances the following causes of action:

(1) Violation of Equal Protection – Gross Sales As Proxy for Ability to Pay Is Arbitrary and Irrational;
(2) Violation of Equal Protection – Requirements of Uniformity and Apportionment;
(3) Violation of U.S. Const. art. I, § 10;
(4) Violation of Cal. Const. art. XIII A, § 4;
(5) Violation of Cal. Gov't Code § 53725;
(6) Governmental Taking Without Compensation – Monetary Exaction No Essential Nexus or Rough Proportionality;
(7) Governmental Taking Without Compensation – Unconstitutional Special Assessment;
(8) Governmental Taking Without Compensation – ULA Is Confiscation of Property, Not Taxation;
(9) Violation of Freedom of Speech;
(10) Violation of Substantive Due Process;
(11) Unlawful Delegation of Authority;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

(12) Unconstitutional Vagueness;
(13) Violation of the Commerce Clause;
(14) Damages Under 42 U.S.C. § 1983;
(15) Writ of Mandate;
(16) Declaratory Relief; and
(17) Determination of Invalidity (Cal. Code Civ. Proc. § 860 et seq.).

*Id.*

On March 15, 2023, the City filed a Motion to Dismiss First Amended Complaint or, Alternatively, to Stay (Dkt. 41, "City MTD") which the County and Recorder's Office joined. Dkt. 42. The City MTD included a Request for Judicial Notice. Dkt. 41-2 ("City RFN"). On April 3, 2023, Plaintiffs filed an opposition to the City MTD. Dkt. 48 ("Opposition to the City MTD"). The Opposition to the City MTD included a Request for Judicial Notice. Dkt. 48-2 ("Plaintiffs' Opposition RFN"). On April 10, 2023, the City filed a reply (Dkt. 52, "City Reply") and a Supplemental Request for Judicial Notice. Dkt. 52-1 ("City Reply RFN"). On April 17, 2023, Plaintiffs filed an objection to the Supplemental RFN (Dkt. 55, "Objection") and a Request for Judicial Notice in Support of the Objection. Dkt. 56 ("Plaintiffs' Reply RFN").

On March 27, 2023, Korean Immigrant Workers Advocates of Southern California DBA Koreatown Immigrant Workers Alliance ("KIWA"), Southern California Association of Non-Profit Housing, Inc. ("SCANPH"), and Service Employees International Union Local 2015 ("SEIU") (collectively, "API") filed a Motion to Dismiss and Motion to Stay First Amended Complaint. Dkt. 45 ("API MTD"). The API MTD included a Request for Judicial Notice. Dkt. 45-2 ("API RFN"). On April 10, 2023, Plaintiffs filed an opposition. Dkt. 53 ("Opposition to the API MTD"). On April 17, 2023, API filed a reply (Dkt. 57, "API Reply") and a Supplemental Request for Judicial Notice. Dkt. 57-1 ("API Reply RFN").

A hearing on the City MTD and API MTD (collectively, the "Motions") was held on May 1, 2023. On May 9, 2023, the parties filed supplemental briefing. *See* Dkts. 64–66. Plaintiffs filed a Request for Judicial Notice Regarding Supplemental Briefing. Dkt. 67 ("Plaintiffs' Supplemental RFN"). On June 7, 2023, Plaintiffs filed a Supplemental Request for Judicial Notice. Dkt. 70 ("Plaintiffs' RFN re WSJ Article"). On June 22, 2023, Plaintiffs filed a Request for Judicial Notice Regarding State Court Reservation of Federal Rights. Dkt. 71 ("Plaintiffs' RFN re Reservation").

For the reasons stated in this Order, the City Motion is **GRANTED**, and the API Motion is **MOOT**. This action is **DISMISSED**; provided, however, dismissal is without prejudice to Plaintiffs proceeding in the appropriate California Superior Court.

**II.     Factual Background**

     A.     Parties

Plaintiffs are residents of the County of Los Angeles who own real properties in the City of Los Angeles that are valued at more than $5 million. Dkt. 14 ¶ 7. The named Defendants are the City, the County, and the Recorder's Office.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

The FAC also names as defendants "all other persons interested in the matter of ULA and all proceedings related thereto," as required by Cal. Code Civ. Proc. § 860 *et seq.* Dkt. 14 at 2. Those persons are identified in the API MTD as Korean Immigrant Workers Advocates of Southern California DBA Koreatown Immigrant Workers Alliance ("KIWA"), Southern California Association of Non-Profit Housing, Inc. ("SCANPH"), and Service Employees International Union Local 2015 ("SEIU"). Dkt. 45 at 2.

   B.  Measure ULA

On November 8, 2022, Los Angeles voters approved a citizen's initiative entitled "Measure ULA." It imposes a special surcharge transfer tax of 4.0% of the gross proceeds of sale on all real properties sold in the City, where the sales price is more than $5 million, but less than $10 million, and a tax of 5.5% of the gross proceeds of sale where the sales price is $10 million or more. Dkt. 14 ¶ 6.[1] The stated purpose of Measure ULA is to reduce homelessness by creating a sustained source of funding for "supportive and affordable housing programs, including development, construction, acquisition, rehabilitation, and operation of housing" and "for financial, educational, and other resources to low-income and other tenants at risk of homelessness, displacement, or eviction." *Id.* ¶ 38.

   C.  State Court Actions

On December 21, 2022, the Howard Jarvis Taxpayers Association and the Apartment Association of Greater Los Angeles (collectively, "HJTA") filed an action (the "HJTA Case") in the Los Angeles Superior Court, in which they challenged the validity of Measure ULA. *See* Dkt. 41-2 ("City RFN"), Exh. 1 (Complaint in *Howard Jarvis Taxpayers Association et al. v. City of Los Angeles and All Persons Interested in the Matter of Measure ULA*, Los Angeles Cnty. Super. Ct. Case No. 22STCV39662). Specifically, HJTA filed a "reverse validation" action pursuant to Cal. Code Civ. Proc. §§ 860–870.5 (the "Validation Statutes") and Cal. Gov't Code § 50077.5. The primary claim advanced by HJTA is that Measure ULA is an unlawful "special tax" under Article XIIIA, Section 4 of the California Constitution. *See generally* City RFN, Exh. 1.

A validation action is an *in rem* proceeding. It can be initiated either by a public agency or an interested person. Cal. Code Civ. Proc. §§ 860, 863. Through the validation proceeding, the public agency or interested persons can obtain " 'a single dispositive final judgment,' " as to whether certain governmental actions are lawful. *Friedland v. City of Long Beach*, 62 Cal.App.4th 835, 842 (1998) (quoting *Committee for Responsible Planning v. City of Indian Wells*, 225 Cal.App.3d 191, 197–98 (1990)). Interested persons may appear in such a proceeding either to defend the validity of the challenged action, or to pursue constitutional and/or non-constitutional challenges, as well as certain remedies, *e.g.*, writ of mandate or declaratory relief. *Id.*

A court has jurisdiction over the subject matter, or the "res," after the plaintiff satisfies service and publication of summons requirements for providing notice to any interested persons, and the deadline specified in the summons for interested persons to answer has passed. Cal. Code Civ. Proc. §§ 861, 861.1, 862, 863. The Los Angeles Superior Court secured jurisdiction over Measure ULA in the HJTA

---

[1] In the subsequent discussion in this Order, "Measure ULA" is a reference to the voter initiative, and "the ULA" is a reference to the assessment imposed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

Case on February 15, 2023. City RFN, Exh. 3 (summons in the HJTA Case stating that interested persons must respond to the complaint by February 15, 2023).

On January 6, 2023, Plaintiffs filed this action and an identical action (the "Newcastle State Case") (collectively, the "Newcastle Actions") in the same Los Angeles County Superior Court where the HJTA Case is pending. *See* City RFN, Exh. 4 (Complaint in *Newcastle Courtyards, LLC, et al. v. City of Los Angeles, et al. and All Persons Interested in the Matter of the ULA*, Los Angeles Cnty. Super. Ct. Case No. 23STCV00352). In addition to the claims brought in the HJTA Case, the Newcastle Actions advance certain federal causes of action. The Superior Court secured jurisdiction over the Newcastle State Case on March 14, 2023. City RFN, Exh. 7 (proof of publication of summons, which provides response deadline of March 14, 2023). The Newcastle State Case has been consolidated with the HJTA case. *See* Plaintiffs' Supplemental RFN, Exhs. 5–6 (showing consolidated case caption).

  D.  The FAC

In this action, unlike in the Newcastle State Case, Plaintiffs never served the City with the original Complaint. On February 10, 2023, Plaintiffs filed the FAC in this action and applied *ex parte* for an order authorizing publication of the summons. Dkt. 15. On February 21 and 24, the publication process was approved, and a summons was issued. It states that March 27, 2023, would be the last day for any person to file an answer. Dkt. 22; Dkt. 26. Newcastle did not file proof of service of completion of publication within 60 days of filing this action, i.e., by March 7, 2023, as required by Section 863 of the California Code of Civil Procedure.

The FAC adds a claim under the Commerce Clause and a claim for unlawful delegation of authority under the California Constitution. Dkt. 14 ¶¶ 229–32, 236–39. In all other respects, the FAC is identical to the complaint filed in the Newcastle State Case.

**III.**  **Requests for Judicial Notice**

  A.  Legal Standards

Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Consideration of such materials ensures that "allegations that contradict matters properly subject to judicial notice or by exhibit" are not simply "accept[ed] as true" in connection with a motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court may take judicial notice of a wide range of records, including public records, government documents, judicial opinions, municipal ordinances, newspaper and magazine articles, and the contents of websites. *See, e.g., Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013); *Tollis, Inc. v. Cnty. of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007); *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994); *Heidelberg USA, Inc. v. PM Lithographers, Inc.*, No. CV 17-02223-AB (AJWx), 2017 WL 7201872, at *2–3 (C.D. Cal. Oct. 19, 2017); *United States, ex rel. Modglin v. DJO Glob., Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. May 8, 2015).

Even if a court takes judicial notice of a record, it must distinguish between undisputed and disputed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

matters within that record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). For example, "when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.' " *Id.* at 690 (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3rd Cir. 1999)).

    B.    Application

        1.    Defendants' Requests for Notice

In support of the City MTD, the City requests judicial notice of the following: the complaint, answer and proof of publication and summons filed in the HJTA Case; the complaint, notice of related cases, answer and proof of service of summons by publication in the Newcastle State Case; and the publication of summons filed in this action. *See generally* City RFN. API requests judicial notice of these same documents. *See generally* API RFN. In support of the City Reply, the City requests judicial notice of its motion to consolidate the HJTA Case and the Newcastle State Case filed in the HJTA Case, as well as judicial notice of minute orders in both cases scheduling case management conference for May 3, 2023. City Reply RFN. In Support of the API Reply, API seek judicial notice of Plaintiffs' partial opposition to the City's motion to consolidate and of a print-out of the Los Angeles City Charter §§ 450–55, downloaded from https://codelibrary.amlegal.com/codes/ los_angeles/latest/laac/0-0-0-1767. API Reply RFN.

A court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the litigation, but rather to establish the fact of such litigation and related filings." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1113 (C.D. Cal. Oct. 20, 2003) (citation omitted). Therefore, the City FFN, API RFN, City Reply RFN and API Reply RFN, as to the request for notice of the Plaintiffs' opposition, are **GRANTED**.

Judicial notice is also appropriate as to the copy of Los Angeles City Charter §§ 450–55 because it is a publicly available government document whose authenticity is not disputed. *Gonzales v. City of Los Angeles*, No. 220CV03519JGBMAA, 2022 WL 18356429, at *6 (C.D. Cal. Dec. 2, 2022), *report and recommendation adopted*, No. 220CV03519JGBMAA, 2023 WL 219211 (C.D. Cal. Jan. 13, 2023). Therefore, the API Reply RFN is **GRANTED** as to that exhibit.

        2.    Plaintiffs' Requests for Notice

            a)    Court Documents

Plaintiffs request judicial notice of the following:

    (1)    the demurrer filed by the County in the Newcastle State Case, Plaintiffs' Reply RFN;
    (2)    the "Stipulation to Request that the Consolidated Cases Remain in Department 72," filed in the HJTA Case, Plaintiffs' Supplemental RFN, Exh. 4;
    (3)    the "Notice of Entry of Minute Order," filed in the HJTA Case, Plaintiffs' Supplemental RFN, Exh. 5; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

    (4)    the "Reservation of Federal Claim Rights by Plaintiffs and Petitioners Newcastle Courtyard, LLC and Jonathan Benabou" filed in the HJTA Case, Plaintiffs' RFN re Reservation.

Because these documents were filed or issued in another court, the requests for notice of them are **GRANTED**.

Plaintiffs also request judicial notice of a copy of the arguments submitted in opposition to Measure ULA, which is an excerpt of a document filed by the City in this action at Dkt. 41-2. Plaintiffs' Supplemental RFN, Exh. 6. A court "need not take judicial notice of filings on its own docket or orders it has previously issued." *Tuan Nguyen v. Aurora Loan Servs., LLC*, No. SA-CV-11-1638-AG (ANx), 2011 WL 13234276, at *2 (C.D. Cal. Dec. 5, 2011); *see also Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1075 n.2 (N.D. Cal. Apr. 13, 2015) (declining to take judicial notice of complaint). Therefore, this request is **DENIED AS MOOT**.

                2)    Extrinsic Evidence

Plaintiffs request judicial notice of the following webpages and articles:

(1)    a print-out of a page entitled "Real Property Transfer Tax and Measure ULA FAQ" from the Los Angeles Office of Finance's website (Plaintiffs' Opposition RFN); and
(2)    the 2023–2024 Budget Summary from the Los Angeles Mayor's Office (Plaintiffs' Supplemental RFN, Exh. 1);
(3)    a Los Angeles Times article, dated May 5, 2023, entitled "L.A's luxury real estate market freezes, putting 'mansion tax' funds in limbo" (Plaintiffs' Supplemental RFN, Exh. 2);
(4)    a letter from Ron Galperin, Controller, City of Los Angeles, dated February 23, 2022, entitled "The Problems and Progress of Prop. HHH" (Plaintiffs' Supplemental RFN, Exh. 3); and
(5)    a Wall Street Journal article, dated June 2, 2023, titled "California Spent $17 Billion on Homelessness. It's Not Working." Dkt. 70 ("Plaintiffs' RFN re WSJ Article").

"It is not uncommon for courts to take judicial notice of factual information found on the world wide web. This is particularly true of information on government agency websites, which have often been treated as proper subjects for judicial notice." *Paralyzed Veterans of Am. v. McPherson*, No. 06-cv-4670-SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (internal quotations and citation omitted); *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ("a court may take judicial notice of records and reports of administrative bodies") (internal quotations and citation omitted). The Ninth Circuit has confirmed that courts "may take judicial notice of publications," such as "newspapers, magazines, and books." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

Based on an application of the foregoing standards, the RFN is **GRANTED** as to these documents. However, judicial notice of the news articles is for the limited purpose of showing "what was in the public realm at the time, not whether the contents of those articles were in fact true." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (judicial notice is appropriate as to the fact that certain statements were made and information was accessible to the public, but not as to the truth of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

those statements).

**IV.     City MTD**

      A.     Legal Standards

Federal courts are courts of limited jurisdiction and generally have jurisdiction only as authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Courts presume that a case "lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* Because subject matter jurisdiction involves the Court's authority to hear a case, it cannot be forfeited or waived. *United Sates v. Cotton*, 535 U.S. 625, 630 (2002). Accordingly, when a federal court finds that it lacks subject matter jurisdiction, it must dismiss the complaint in its entirety. Fed. R. Civ. P. 12(h)(3); *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P.12(b)(1) may be either a "facial" or a "factual" challenge. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack on subject-matter jurisdiction, the Court resolves the motion as it would a motion to dismiss under Rule 12(b)(6). *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In a facial challenge, the district court accepts the factual allegations of the complaint as true, draws all reasonable inferences in the plaintiff's favor, and "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121.

      B.     Application

           1.     <u>Tax Injunction Act and Comity Doctrine</u>

                a)     Legal Standards

Under the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." "The comity doctrine extends to claims seeking damages based on the same federalism concerns animating the Tax Injunction Act's limits on declaratory and injunctive relief." *Fredrickson v. Starbucks Corp.*, 840 F.3d 1119, 1124 (9th Cir. 2016).

"The TIA is a limitation on the jurisdiction of federal courts." *Bidart Bros. v. California Apple Comm'n*, 73 F.3d 925, 928 (9th Cir. 1996). "Based on a plain reading of the statute, the district court does not have jurisdiction over [a] Taxpayers' action if it seeks district court interference with California's tax assessment and collection process." *Jerron W., Inc. v. State of Cal., State Bd. of Equalization*, 129 F.3d 1334, 1337 (9th Cir. 1997). "The Supreme Court repeatedly has characterized the [TIA] as a 'broad jurisdictional barrier,' which 'limit[s] drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.' " *Lowe v. Washoe Cnty.*, 627 F.3d 1151, 1155 (9th Cir. 2010) (quoting *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 825 (1997); *California v. Grace Brethren Church*, 457 U.S. 393, 408–409 (1982)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

The TIA precludes several categories of federal relief, including declaratory relief, injunctive relief, and damages under 42. U.S.C. § 1983, "as long as the taxpayer has an adequate remedy in state court." *Patel v. City of San Bernardino*, 310 F.3d 1138, 1140 (9th Cir. 2002); *accord Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981) ("taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts," and must instead "seek protection of their federal rights by state remedies").

    b)  Application

Plaintiffs contend that the TIA does not preclude federal jurisdiction over this matter for the following reasons: (1) the ULA is not a "tax" for the purposes of the TIA; (2) the ULA is not "under State law;" and (3) a plain, speedy and efficient remedy in state court is unavailable.

    1)  <u>Whether the ULA Is a Tax</u>

The Ninth Circuit has established three primary factors in determining whether a charge or assessment constitutes a tax for the purposes of the TIA: (1) whether the entity that imposes the assessment is a legislative body; (2) whether the group upon which the assessment is imposed is broad; and (3) whether assessments are treated as general revenues and are paid into the general fund of the state. *See Bidart*, 73 F.3d at 930–32. "Where the first two factors are not dispositive, courts examining whether an assessment is a tax 'have tended . . . to emphasize the revenue's ultimate use.' " *Id.* (quoting *San Juan Cellular Telephone Co. v. Public Serv. Comm'n of Puerto Rico*, 967 F.2d 683, 685 (1st Cir. 1992)).

Plaintiffs have advanced two other issues that must be addressed prior to the application of the *Bidart* factors to Measure ULA. *First*, Plaintiffs contend that the ULA is not a tax, but rather an "assessment" or a "monetary exactment." *See, e.g.*, Dkt. 48 at 9. The contention that the ULA is an "assessment" instead of a "tax" is misguided. *Bidart* and subsequent decisions distinguish two types of assessments: taxes, which are covered by the TIA, and fees, which are not. Therefore, the question is whether the assessment imposed by Measure ULA is a tax or a fee. 73 F.3d at 930–32.

*Second*, Plaintiffs contend that the City is precluded from arguing that the ULA is a tax because it failed to address the *Bidart* factors in the City MTD. Dkt. 48 at 7. This argument is unpersuasive. "The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss." *MCI Commc'ns Servs., Inc. v. City of Eugene, OR*, 359 F. App'x 692, 697 (9th Cir. 2009). The City's opening brief contends that, because the ULA is a tax, the TIA precludes federal jurisdiction. Dkt. 41. Plaintiffs bear the burden of proving that the TIA does not bar jurisdiction by showing that the ULA is not a tax within the meaning of the TIA or that an exception to the TIA applies.

In light of these determinations, the following discussion addresses the application of the three factors identified as to whether a charge or assessment is a tax.

      i.  Factor One: The Entity Imposing the Assessment

An "assessment imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative agency." *Bidart*, 73 F.3d at 931. Measure ULA is a citizen-sponsored initiative approved by the City's voters. Defendants contend that this factor weighs against finding that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

ULA is a tax because voters are not a government. Dkt. 52 at 9. This argument is unpersuasive.

The California Supreme Court has held that "when the electorate exercises its initiative power, it is acting in a legislative capacity." *California Cannabis Coal. v. City of Upland*, 3 Cal.5th 924, 944, n.17 (2017); *see also id. at* 951 (Kruger, J., concurring in part and dissenting in part) ("when a city's voters exercise the power of initiative, they do not act merely as members of the public . . . but as legislators; in this capacity, their power to legislate is 'generally co-extensive with the legislative power of the local governing body' ") (quoting *DeVita v. County of Napa*, 9 Cal.4th 763, 775 (1995)); *American Federation of Labor v. Eu*, 36 Cal.3d 687, 695 (1984) (The voter initiative "is not a public opinion poll. It is a method of enacting legislation.").

In enacting Measure ULA, the electorate acted as a legislative body and, functioned more like a legislative body than an administrative agency. Accordingly, this factor weighs in favor of a finding that the ULA is a tax under the TIA.

        ii.        The Parties Required to Pay the Assessment

"An assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." *Bidart*, 73 F.3d at 931. *Bidart* cites with approval *Trailer Marine Transp. Corp. v. Rivera Vazquez*, 977 F.2d 1 (1st Cir.1992), which held that, because fees used to compensate automobile accident victims were "collected only from those seeking the privilege of driving on state highways," this weighed in favor of finding that fees were not taxes. *Id.* at 6. However, *Bidart* also recognized that "an assessment upon a narrow class of parties can still be characterized as a tax under the TIA." 73 F.3d at 931–32 (citing *Wright v. McClain*, 835 F.2d 143, 145 (6th Cir.1987) (fees imposed upon parolees for supervision and victim compensation were "taxes" under the TIA); *Tramel v. Schrader*, 505 F.2d 1310, 1314–16 (5th Cir. 1975) (assessments upon street residents for street improvements were "taxes" under the TIA); *Indiana Waste Sys.*, 787 F. Supp. at 864–65 (a fee imposed on landfill owners was a "tax" under the TIA); *Butler v. State of Me. Supreme Jud. Ct.*, 767 F. Supp. 17, 19 (D. Me. July 10, 1991) (a jury fee imposed on plaintiffs is a "tax" under the TIA).

The parties have not cited, and the Court has not found, any caselaw that provides specific guidance on what constitutes a "broad class" for the purpose of determining if an assessment is a tax under the TIA.[2] "Courts rarely provide a detailed analysis regarding the second factor in difficult cases because an assessment may target a very small group of payors and still be categorized as a tax because the assessment's ultimate purpose benefits the public at large." *Marque Motor Coach, LLC v. Dep't of Tax'n*, No. 218CV00522GMNBNW, 2019 WL 13211510, at *2 (D. Nev. Oct. 28, 2019).

Measure ULA imposes a tax on the sale or transfer of non-exempt real property valued at more than $5 million. Plaintiffs contend that only a small portion of Los Angeles residents own real property, and that the tax would apply to only 2–3% of real estate sales. Dkt. 48 at 12. The City does not respond to Plaintiffs' contention that the ULA targets a narrow group. API contends that the relevant population includes all property owners in Los Angeles because sales and transfers of real property over $5 million are not necessarily limited to those who are wealthy. Dkt. 57 at 3.

---

[2] Addressing this factor, the API Reply contends, without any supporting citation, that a class is broad under *Bidart* if it "encompasses an entire group meeting a specific criterion." Dkt. 57 at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

Given that only a small proportion of Los Angeles residents are likely to engage in real estate transfers or sales at amounts more than $5 million, it would be inaccurate to say that the ULA is imposed on a broad class of persons. Accordingly, this factor weighs against finding that the ULA is a tax.

iii. The Ultimate Use of the Assessment

The third factor is "whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." *Bidart*, 73 F.3d at 931. "Assessments treated as general revenues and paid into the state's general fund are taxes," whereas an "assessment placed in a special fund and used only for special purposes is less likely to be a tax" unless it is or will be expended to provide "a general benefit to the public." *Id.* at 932. *Bidart* cites with approval *Wright v. McClain*, 835 F.2d 143 (6th Cir. 1987), which held that "an assessment upon a parolee was a tax under the TIA, even though it was earmarked for the Corrections Department budget, because it was used to defray the costs of monitoring parolees and to compensate victims, purposes relating 'directly to the general welfare of the citizens' of the state." *Id.* (quoting *Wright*, 835 F.2d at 145). *Bidart* also cites with approval *Schneider Transp., Inc. v. Cattanach*, 657 F.2d 128 (7th Cir. 1981), *cert. denied*, 455 U.S. 909 (1982), which "found vehicle registration fees to be taxes because they were used for transportation purposes, including highway construction, even though the fees were deposited in funds separate from the state's general funds." *Id.* (citing *Schneider*, 657 F.2d at 132).

Where, as here, the first two factors are not dispositive, the ultimate use of the revenue is the most important one. However, *Hexom v. Oregon Dept. of Transp.*, 177 F.3d 1134, 1137 (9th Cir. 1999), cautioned against a "mechanical" approach to this issue. *Id.* at 1137. It held that "[t]he question, in the long run, is not simply where the money is deposited at some point; it is what the purpose or use of the assessment truly is." *Id.* at 1138. "As the Seventh Circuit has pointed out, '[r]ather than a question solely of *where* the money goes, the issue is *why* the money is taken.' " *Id.* (quoting *Hager v. City of West Peoria*, 84 F.3d 865, 870–71 (7th Cir. 1996)) (emphasis in original).

The parties dispute whether courts may look to extrinsic evidence and allow discovery to determine the ultimate use of an assessment. Defendants argue that Plaintiffs may not offer any extrinsic evidence or seek discovery regarding the use of revenue generated from Measure ULA because the Motions present facial challenges to subject matter jurisdiction. Dkt. 64 at 2–3.

This argument is not persuasive. "Considering documents subject to judicial notice is not inconsistent with a facial challenge on subject matter jurisdiction." *Chaudry v. Cnty. of San Diego*, No. 21CV1847-GPC(AHG), 2022 WL 17652794, at *3 (S.D. Cal. Dec. 13, 2022) (citations omitted). Further, courts have permitted discovery for the purpose of developing facts necessary to determine the ultimate use of the funds from an assessment. *See, e.g.*, *Keren Chasanim Corp. v. Vill. of Kiryas Joel*, No. 07 CIV. 262 (SCR), 2008 WL 11518871, at *5 (S.D.N.Y. Nov. 10, 2008) (allowing limited jurisdictional discovery on several "unanswered" questions, including "whether the sanitation charge is collected in the same manner and at the same time as the Village's property taxes, whether and to what extent residential and commercial properties are exempted from paying the sanitation charges, and how the Village uses the monies that it collects from the sanitation charges"); *QWest Corp. v. City of Globe, Arizona*, 237 F. Supp. 2d 1115, 1118 (D. Ariz. Aug. 15, 2002) (deferring determination of whether an assessment is a tax until the conclusion of discovery). *Cf. Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1312 (10th Cir. 1999) (holding that "the ultimate disposition and use of the funds . . . is an issue that can only be resolved by discovery" but ruling, without discovery, that "the assessment is expressly tied to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

administrative costs of a specific regulatory scheme and, therefore, its essential character is regulatory").

Notwithstanding that discovery may be permitted, Defendants cite many cases in which the ultimate use of an assessment is decided without discovery. *See* Dkt. 65 at 2–3 (collecting cases). For the same reasons, such discovery is unnecessary in this action. Defendants do not dispute the detailed allegations in the FAC. The statements of purpose and findings contained in Measure ULA, as well as the public, government documents of which judicial notice has been taken, provide ample information about the purpose of the ULA and the use of the funds that are generated. Moreover, Plaintiffs have not identified any material facts that are in dispute or facts they would seek to develop through discovery.

Measure ULA taxes may only be used to fund affordable housing and tenant assistance programs. The ULA's "impartial summary" states that "the measure's goals include increasing the supply of affordable housing, addressing the need for tenant protections and assistance programs, and building organizational capacity of organizations serving low-income and disadvantaged communities, among others." Dkt. 14-1 at 56. Because not every Los Angeles resident is homeless, low-income or a tenant, the ULA may not directly benefit every segment of the population. However, the assessment seeks to increase safe and affordable housing for all, which relates to the general welfare of Los Angeles residents. Moreover, the extrinsic evidence proffered by Plaintiffs highlights the urgency of the housing crisis in Los Angeles and the broad range of people who may benefit from the programs that ULA funds will support. *See, e.g.*, Plaintiff's Supplemental RFN, Exh. 3 at 63 ("According to the L.A. County Department of Public Health, thousands of unhoused residents died on the streets during this period, increasingly due to overdoses or violence."); *Id.* Exh. 1 at 20–21 (projecting that $150 million in collections from Measure ULA will "support acquisition and rehabilitation of housing ($62 million), short-term emergency assistance for tenants ($20 million), income support for rent-burdened at-risk seniors and people with disabilities ($25 million), eviction defense ($25 million), tenant outreach ($6 million), and tenant protections from harassment ($12 million)"); Dkt. 70 (describing fires and other public health risks to commuters and neighborhoods near certain homeless encampments).

Plaintiffs' primary argument is that funds generated by Measure ULA will be earmarked for a specific purpose. *See, e.g.*, Dkt. 14 ¶¶ 129–130. But this alone does not mean that the ULA is a fee. *See, e.g.*, *Pac. Bells, LLC v. Inslee*, 600 F. Supp. 3d 1149, 1155–59 (W.D. Wash. Apr. 25, 2022) (charges on health care companies to pay for long-term care programs were taxes); *Lavis v. Bayless*, 233 F. Supp.2d 1217, 1218, 1220–22 (D. Ariz. Mar. 16, 2001) (charges on lobbyists and surcharges on traffic fines to pay for election costs were taxes); *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000) (charges imposed on subscribers to waste-collection services to pay for landfill-closure programs were taxes); *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 733 (7th Cir. 2011) (statute imposing a gross receipts tax on casinos, to be deposited into a special fund to be disbursed to racetracks to increase purses for winning bettors and for racetrack improvements, was a tax); *Hill v. Kemp*, 478 F.3d 1236, 1244–46 (10th Cir. 2007) (charges for specialty license plates costs were taxes; the TIA barred claim); *Hedgepeth v. Tennessee*, 215 F.3d 608, 614–15 (6th Cir. 2000) (charges for handicapped-parking placards were taxes because they were not charged to pay for regulatory costs or to recoup costs for the benefits provided).

Plaintiffs also argue that benefits from Measure ULA will be minimal because the City's prior efforts to address homelessness have been ineffective and any public benefits are outweighed by potential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

adverse effects, including a slow-down in the luxury real estate market. For example, Plaintiffs proffer a news article, "California Spent $17 Billion on Homelessness. It's Not Working," to show that "whether the ULA will be of 'general benefit to the public' " is a question of fact. Dkt. 70 at 3. However, Plaintiffs do not offer, and the Court has not found, any caselaw that would support the proposition that the potential ineffectiveness or collateral effects of an assessment are relevant to a determination as to its ultimate use.

Like the assessments in *Wright*, which were earmarked for monitoring parolees and compensating victims, and those in *Schneider Transport*, which were earmarked for transportation purposes such as highway construction, the purpose of the ULA is to confer a public benefit, not to regulate or benefit the those upon whom it is imposed. Accordingly, this factor weighs in favor of finding that the fees constitute a tax for purposes of TIA.

*     *     *

Based on the foregoing discussion, a balancing of the applicable factors weighs in favor of finding that the ULA is a tax under the TIA.

2)     Whether the ULA is "Under State Law"

The TIA prohibits federal courts from interfering with a tax "under State law." 28 U.S.C. § 1341. Plaintiffs contend that the ULA is not a "tax under state law" because Section 537251 of the California Government Code "expressly forbids a special transfer tax such as what the ULA purports to be" and "California Constitution Article XIII A expressly prohibit[s] such a tax." Dkt. 47 at 14. The City contends that argument is "ludicrous" because "[t]he purpose of the TIA is to prevent federal court interference with the collection of state and local taxes, and to ensure that such challenges are resolved in state courts." Dkt. 52 at 14 (citing *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982); *Jerron W., Inc. v. State of Cal., State Bd. Of Equalization*, 129 F.3d 1334, 1338 (9th Cir. 1997)). Because the TIA precludes federal courts from deciding the validity of a local tax, it cannot simply be determined that the TIA does not apply because the ULA is invalid. For these reasons, the ULA is a tax "under State law" within the meaning of the TIA.

3)     Whether State Courts Provide an Adequate Forum

The TIA only applies to a challenge to a state tax "where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Plaintiffs argue that no meaningful remedy is available in a state court. The basis for this position is that there are neither regulations, nor an available tribunal, to determine whether a specific buyer may be exempt from the ULA. Therefore, Plaintiffs contend that they cannot exhaust their administrative remedies as required before pursuing relief in a state court. Dkt. 48 at 15.

This argument is unpersuasive. Two state court actions, one of which was brought by Plaintiffs, currently seek to invalidate the ULA. The validation proceeding statutes in California, pursuant to which Plaintiffs contest the ULA both in this action and in the Newcastle State Case, permit any person to challenge a law within 60 days after its authorization, without exhausting any administrative remedies. Therefore, Plaintiffs may challenge the ULA in a state court proceeding, and have done so.

Plaintiffs' Supplemental Brief raises a new issue as to the adequacy of the state remedy. On April 27,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

2023, the California Supreme Court held:

> A validation action is "a proceeding in rem" (Code Civ. Proc., § 860), which means that the judgment binds all persons and entities having an interest in the agency matter in question. It also means, however, that in a validation action, the plaintiff cannot obtain injunctive relief against a party to the action, for such relief would be in personam. . . . Moreover, when the validation statutes apply, they supersede other mechanisms by which an interested private party might seek to challenge the same agency matter. This preclusion of alternative remedies is necessary if the validation statutes are to serve their purpose of once and for all determining the validity of the agency matter.

*Davis v. Fresno Unified Sch. Dist.*, 14 Cal.5th 671, 685 (2023) (citations omitted).

On May 2, 2023, the defendants in the HJTA Case stipulated that it should not be transferred to the writ department of the Los Angeles Superior Court on the basis that, under *Davis*, the plaintiff in a validation action cannot seek any *in personam* relief, including a writ of mandate. Plaintiffs' Supplemental RFN, Exh. 4 at 68. Plaintiffs contend that "Defendants' interpretation of *Davis* would necessarily mean that Plaintiffs are left with no remedy whatsoever, in state court, for their writ, injunction and Section 1983 claims for relief." Dkt. 66 at 11 (emphasis omitted). Plaintiffs disagree with Defendants' interpretation of *Davis*, but argue the state court necessarily relied on it by approving the stipulation. On this basis they contend that this Court must accept that interpretation under the principle of collateral estoppel. *Id.*

This argument is unpersuasive. *First*, the evidence presented does not show that the Superior Court agreed that *Davis* precludes all *in personam* relief from governmental actions that may be challenged under the validation statutes. *See* Plaintiffs' Supplemental RFN, Exh. 5 at 79 (May 3, 2023 minute order in HJTA Case stating that "[t]he case remains assigned to this department," without providing reasoning). Nor have Plaintiffs proffered evidence that their claims for the issuance of a writ, injunctive relief, or damages under § 1983 have been dismissed with prejudice.

*Second*, the requirement in the TIA of a "plain, speedy and efficient" state court remedy "was only designed to require that the state remedy satisfy certain procedural criteria." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981). "State remedies are 'plain, speedy and efficient' if they provide the taxpayer with a 'full hearing and judicial determination at which she may raise any and all constitutional objections to the tax.' " *Capra v. Cook Cty. Bd. of Review*, 733 F.3d 705, 714 (7th Cir. 2013) (quoting *Rosewell*, 450 U.S. at 514). "The state remedy need not be the best remedy available or even equal the remedy which might be available in federal court." *Finizie v. City of Bridgeport*, 880 F. Supp. 89, 94 (D.Conn. Mar. 25, 1995); *see, e.g.*, *Nat'l Priv. Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 587 (1995) ("As long as state law provides a 'clear and certain remedy,' . . . the States may determine whether to provide predeprivation process (*e.g.,* an injunction) or instead to afford postdeprivation relief (*e.g.,* a refund).") (quoting *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation*, 496 U.S. 18, 51 (1990)) (citations and quotation marks omitted).

Based on the foregoing, the TIA precludes the issuance of federal injunctive or declaratory relief where the state provides the taxpayer a mechanism to obtain a hearing and judicial determination regarding constitutional objections to a tax. *Rosewell*, 450 U.S. at 512; *California v. Grace Brethren Church*, 457

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

U.S. at 417   ("because the appellees could seek a refund of their state unemployment insurance taxes, and thereby obtain state judicial review of their constitutional claims, we hold that their remedy under state law was 'plain, speedy and efficient' within the meaning of the Tax Injunction Act, and consequently, that the District Court had no jurisdiction to issue injunctive or declaratory relief"). Similarly, "the principle of comity bars federal courts from granting damages relief" and "injunctive and declaratory relief in state tax cases." *Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. at 107; *see also Marvin F. Poer & Co. v. Ctys. of Alameda*, 725 F.2d 1234, 1236 (9th Cir. 1984) ("although the language of the [Tax Injunction] Act does not specifically cover actions for refund or damages, federal court consideration of such cases must be barred lest the Tax Injunction Act be deprived of its full effect").

The Supreme Court has specifically addressed § 1983 claims in this context:

> The recovery of damages under the Civil Rights Act first requires a "declaration" or determination of the unconstitutionality of a state tax scheme that would halt its operation. And damages actions, no less than actions for an injunction, would hale state officers into federal court every time a taxpayer alleged the requisite elements of a § 1983 claim. We consider such interference to be contrary to "[t]he scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts."

*Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. at 115–16 (quoting *Matthews v. Rodgers*, 284 U.S. 521, 525 (1932)). Indeed, § 1983 cannot be used to litigate state tax disputes in either state or federal court. *Patel*, 310 F.3d at 1141.

Based on the foregoing discussion, the TIA and principles of comity divest this Court of subject matter jurisdiction over Plaintiffs' challenges to the ULA -- whether they are made *in rem* or *in personam* -- because the invalidation statutes provide Plaintiffs an opportunity to raise the constitutional objections in state court.

\* \* \*

For the foregoing reasons, there is no subject matter jurisdiction over this action. Therefore, the City MTD is **GRANTED**, and this case is **DISMISSED**; provided, however, dismissal is without prejudice to Plaintiffs pursuing their claims in a California superior court. Accordingly, the API MTD is **MOOT**.

      2.    *Colorado River* Doctrine

          a)    Legal Standards

For completeness, a consideration of whether this action should be dismissed or stayed under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) is also addressed. The Ninth Circuit has "listed eight factors to be considered in determining whether" a dismissal or stay pursuant to *Colorado River* is appropriate:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*United States v. State Water Resources Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021) (quoting *R.R. St. & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978–979 (9th Cir. 2011)).

Not all of these factors necessarily apply in every action. *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). Further, given that the presumption weighs strongly in favor of exercising jurisdiction, only "exceptional" circumstances warrant a stay and corresponding abstention. *Id.* (citing *Moses H. Cone*, 460 U.S. at 25–26).

      b)     Application

           1)     <u>Which Court First Assumed Jurisdiction Over the Property</u>

Section 860 of the California Code of Civil Procedure provides that an action challenging the validity of a local law is "in the nature of a proceeding *in rem*." "Thus a validation action operates against property, as distinct from an injunction that operates against persons." *Friedland v. City of Long Beach*, 62 Cal.App.4th 835, 843 (1998) (citing *Bernardi v. City Council*, 54 Cal.App.4th 426, 434, n.8 (1997)).

"As an in rem proceeding, a validation action differs from traditional actions challenging a public agency decision; its effect binds the agency and all other persons." *Id.* (citing *Committee for Responsible Planning v. City of Indian Wells*, 225 Cal.App.3d at 197). The FAC alleges that the 17th cause of action is an "*in rem* reverse validation action" under Cal. Code Civ. Proc. §§ 860 *et seq.*, seeking a "judicial determination and declaration the [] ULA taxes are invalid, illegal, void, unenforceable and not binding on anyone." Dkt. 14 ¶¶ 11, 265.

Defendants contend that the state court first assumed jurisdiction over the res, *i.e.*, Measure ULA. *See* Cal. Code Civ. Proc. § 862 ("Jurisdiction shall be complete after the date specified in the summons."); *See* Dkt. City RFN, Exh. C (Proof of Publication of Summons filed on February 1, 2023, in the HJTA Case); *id.*, Exh. D (Proof of Publication of Summons filed on March 7, 2023, in the Newcastle State Case). Plaintiffs argue that no property or res is at stake in this action, noting that Cal. Code Civ. Proc. § 860 only states that a validation proceeding is in the nature of an *in rem* proceeding.

Since the initial round of briefing in this action, the California Supreme Court ruled that a validation action is a proceeding in rem. *Davis v. Fresno Unified Sch. Dist.*, 14 Cal.5th at 685 ("A validation action is 'a proceeding in rem' (Code Civ. Proc., § 860), which means that the judgment binds all persons and entities having an interest in the agency matter in question."). However, it is unnecessary to determine whether there is a traditional res in this proceeding. A stay is favored in this action for the same reason it would be if this action involved physical property: The determination by the state court on this issue is a final, binding judgment as to all interested parties. Just as conflicting rulings regarding entitlement to a single parcel of land would create complex legal issues, two conflicting, yet purportedly final and binding, judgments as to the validity of the ULA would present similar problems, including those that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

could arise during parallel, appellate reviews.

Therefore, this factor weighs strongly in favor of a stay.

### 2) Inconvenience of the Federal Forum

The state court action and this action are both proceeding in Los Angeles. Therefore, this factor does not weigh in favor of a stay.

### 3) Desire to Avoid Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. For this factor to favor a stay, the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding, and which the court could [not] have avoided by other means." *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1167 (9th Cir. 2017) (internal citations and quotation marks omitted).

As discussed above, the final, binding nature of an action under the California invalidation statutes raises a significant concern about multiple forums deciding the validity of the ULA. Although this action advances two causes of action that are not expressly stated in the Newcastle State Case, Plaintiffs could have advanced those causes of action in the Newcastle State Case to avoid any piecemeal litigation.

Therefore, this factor weighs strongly in favor of a stay.

### 4) Order in Which the Forums Obtained Jurisdiction

It is undisputed that the state court obtained jurisdiction over both state cases before this Court had jurisdiction. Plaintiffs argue that all the cases are at the same stage procedurally and, therefore, this factor does not weigh in favor of a stay. However, as previously discussed, it is not clear that any forum can secure jurisdiction over the subject matter in a reverse invalidation action if another forum has already done so. Further, at the time the Motions were filed, the defendants in both state cases had filed answers to the complaints, as well as one demurrer in the Newcastle State Case. Therefore, the HJTA case had proceeded past the dismissal/demurrer stage. Since the initial round of briefing, the state cases have become more procedurally advanced. For example, they have been consolidated.

Therefore, this factor weighs in favor of a stay.

### 5) Whether Federal Law or State Law Provides the Rule of Decision on the Merits

This action advances both state and federal causes of action. Most of the causes of action arise under federal law. Defendants contend that the primary issue in these actions is whether Article XIIIA, Section 4 of the California Constitution proscribed the authority of voters to adopt Measure ULA by a citizens' initiative. However, Defendants do not provide a basis for this contention. Further, the presence of state-law issues weighs in favor of a stay "only 'in some rare circumstances.' " *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (quoting *Moses H. Cone*, 460 U.S. at 26).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

Therefore, this factor weighs against a stay.

### 6) Whether the State Court Proceedings Can Adequately Protect the Rights of the Federal Litigants

"A district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants. For example, if there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate." *R.R. St. & Co. v. Transport Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011).

As discussed above, the state court provides an adequate forum to protect the rights of the Plaintiffs. Therefore, this factor weighs in favor of a stay.

### 7) The Desire to Avoid Forum Shopping

To avoid forum-shopping, courts may consider "the vexatious or reactive nature of either the federal or the state litigation." *Moses H. Cone*, 460 U.S. at 17 n.20. Defendants concede that there is no adverse state court ruling that the Plaintiffs seek to avoid by litigating in this forum. However, Plaintiffs filed nearly identical actions in the state court and federal courts on the same day, and later amended the Complaint in the federal action to add additional claims that Plaintiffs now contend provide a basis for denying the stay. Viewed collectively, the evidence supports a claim of forum shopping.

Therefore, this factor weighs in favor of a stay.

### 8) Whether the State Court Proceedings Will Resolve All Issues Before the Federal Court

The final factor is "whether the state court proceeding sufficiently parallels the federal proceeding" in order "to ensure 'comprehensive disposition of litigation.' " *R.R. St. & Co.*, 656 F.3d at 982 (quoting *Colo. River*, 424 U.S. at 817). "[T]he existence of a substantial doubt as to whether the [non-federal] proceedings will resolve the federal action precludes the granting of a stay*." Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

Plaintiffs concede that the state and federal actions are substantially similar. The two additional causes of action in this case will be moot if the state court finds that the ULA is invalid.

Therefore, this factor weighs in favor of a stay.

\* \* \*

The balance of factors show that a stay of these proceedings would be warranted under *Colorado River* if this Court had subject matter jurisdiction over these proceedings.[3]

---

[3] The API MTD argues that abstention is warranted under several additional doctrines. Because a stay would be granted under *Colorado River*, it is unnecessary to address those issues.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV23-00104 JAK (ASx) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Newcastle Courtyards, LLC et al. v. City of Los Angeles, et al. | | |

### 3. Timing of Publication Under the Validation Proceeding Statutes

Finally, the City argues that there is no jurisdiction over the reverse validation claim because the summons was not timely published, as required under Cal. Code Civ. Proc. § 863. However, dismissal is not warranted on this basis if good cause is shown for the failure timely to complete the publication. The City argues that Plaintiffs are responsible for these circumstances because they failed to seek an order from the Court authorizing the publication for thirty-five days after the Complaint was filed. Plaintiffs argue it was reasonable to wait until the FAC was filed to seek an order for publication.

Prior to granting the request for publication, this Court requested supplemental briefing on Plaintiffs' opposed *ex parte* application for an order granting that relief. No evidence has been presented that, after the application was granted on February 21, 2023, Plaintiffs delayed in publishing the summons. Although the untimely completion of publication was due in part to Plaintiffs' decision to wait to publish the summons until after the FAC was filed, that decision was not unreasonable. Therefore, good cause has been shown for the failure timely to complete the publication, and the City MTD is denied as to this issue.

### V. Conclusion

For the reasons stated in this Order, the City MTD is **GRANTED**, and this action is **DISMISSED** without prejudice, *i.e.*, without effect on the ongoing proceedings in the Los Angeles Superior Court, Case No. No. 23STCV00352. Accordingly, the API MTD is **MOOT**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    tj